**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRANK GREEN and ROBERT CONRAD, | No. 2:24-cv-01975-MKB-ARL |
| Plaintiffs, | |
| v. | |
| JOSEPH R. BIDEN, JR., *et al.*, | |
| Defendants, | **MEMORANDUM OF LAW IN SUPPORT OF PROPOSED DEFENDANT-INTERVENORS' MOTION TO INTERVENE** |
| and | |
| NATURAL RESOURCES DEFENSE COUNCIL, INC.; CONSERVATION LAW FOUNDATION; CENTER FOR BIOLOGICAL DIVERSITY; and R. ZACK KLYVER, | ***ORAL ARGUMENT REQUESTED*** |
| Proposed Defendant-Intervenors. | |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

    I.     History of the Northeast Canyons and Seamounts Marine National Monument ...................................................................................................2

          A.     The Monument area and its scientific importance.......................................2

          B.     The 2016 Proclamation ................................................................................3

          C.     The 2020 Proclamation ................................................................................5

          D.     The 2021 Proclamation ................................................................................5

    II.     Plaintiffs' complaint.........................................................................................7

    III.     Proposed Intervenors .......................................................................................7

ARGUMENT ...................................................................................................10

    I.     Proposed Intervenors are entitled to intervene as of right ....................................10

          A.     Proposed Intervenors' motion to intervene is timely.................................10

          B.     Proposed Intervenors have cognizable interests at stake in this litigation ...............................................................................................11

          C.     If successful, Plaintiffs' action may impair Proposed Intervenors' interests in protecting the Monument from harm ......................................14

          D.     Federal Defendants may not adequately represent Proposed Intervenors' interests.................................................................15

    II.     Alternatively, the Court should permit Proposed Intervenors to intervene permissively .......................................................................................19

CONCLUSION...................................................................................................20

## TABLE OF AUTHORITIES

### CASES

*Berger v. N.C. State Conf. of the NAACP,*
 597 U.S. 179 (2022) ........................................................................................ 15, 16, 18

*Butler, Fitzgerald & Potter v. Sequa Corp.,*
 250 F.3d 171 (2d Cir. 2001) ............................................................................................ 16

*Herdman v. Town of Angelica,*
 163 F.R.D. 180 (W.D.N.Y. 1995) ................................................................ 11, 14, 16, 17

*In re New York City Policing During Summer 2020 Demonstrations,*
 27 F.4th 792 (2d Cir. 2022) ............................................................ 10, 11, 14, 15, 19

*Kleissler v. U.S. Forest Serv.,*
 157 F.3d 964 (3d Cir. 1998) ............................................................................................ 17

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
 591 U.S. 657 (2020) .......................................................................................................... 11

*Mass. Lobstermen's Ass'n v. Raimondo,*
 141 S. Ct. 979 (2021) .......................................................................................................... 5

*Mass. Lobstermen's Ass'n v. Ross,*
 349 F. Supp. 3d 48 (D.D.C. 2018) .................................................................................... 5

*Mass. Lobstermen's Ass'n v. Ross,*
 945 F.3d 535 (D.C. Cir. 2019) .......................................................................................... 5

*Trbovich v. United Mine Workers,*
 404 U.S. 528 (1972) .......................................................................................................... 15

*United States v. Hooker Chems. & Plastics Corp.,*
 749 F.2d 968 (2d Cir. 1984) ............................................................................................ 16

*United States v. N.Y.C. Hous. Auth.,*
 326 F.R.D. 411 (S.D.N.Y. 2018) ...................................................................................... 20

*United States v. Pitney Bowes, Inc.,*
 25 F.3d 66 (2d Cir. 1994) ................................................................................................ 10

*Utah Ass'n of Ctys. v. Clinton,*
 255 F.3d 1246 (10th Cir. 2001) ...................................................................................... 15

## PRESIDENTIAL PROCLAMATIONS
## AND EXECUTIVE ORDERS

Proclamation No. 10287, 86 Fed. Reg. 57,349 (Oct. 8, 2021)
(the 2021 Proclamation)................................................................................................ 6

Exec. Order No. 13990, 86 Fed. Reg. 7037 (Jan. 20, 2021)........................................................ 6

Proclamation No. 10049, 85 Fed. Reg. 35,793 (June 5, 2020)
(the 2020 Proclamation).......................................................................................... 5, 19

Proclamation No. 9496, 81 Fed. Reg. 65,161 (Sept. 15, 2016)
(the 2016 Proclamation)...................................................................................... 3, 4, 18

## STATUTES AND RULES

54 U.S.C. § 320301 ................................................................................................ 3, 19

88 Fed. Reg. 72,038 (Oct. 19, 2023)............................................................................ 6

89 Fed. Reg. 12,282 (Feb. 16, 2024) ........................................................................... 6

Fed. R. Civ. P. 24........................................................................ 10, 11, 13, 14, 15, 19, 20

## OTHER AUTHORITIES

The White House, *Fact Sheet: Creating the First Marine National Monument in the Atlantic Ocean* (Sept. 15, 2016) ...................................................................................... 3

U.S. Dep't of the Interior, *Administration Leaders Applaud President Biden's Restoration of National Monuments* (Oct. 7, 2021) ...................................................................... 1

## INTRODUCTION

Natural Resources Defense Council (NRDC), Conservation Law Foundation (CLF), Center for Biological Diversity (CBD), and R. Zack Klyver (collectively, "Proposed Intervenors") seek to intervene in this case to protect their interests in the Northeast Canyons and Seamounts Marine National Monument.[1] The Monument encompasses a system of underwater canyons and seamounts and associated habitats that sustain a wide array of sea life—including endangered whales and sea turtles, Atlantic puffins and other seabirds, and ancient deep-sea corals. Given the exceptionally abundant biodiversity here, the Monument has been called "one of science's greatest oceanic laboratories." U.S. Dep't of the Interior, *Administration Leaders Applaud President Biden's Restoration of National Monuments* (Oct. 7, 2021).[2] Recognizing its scientific importance, President Obama declared it a national monument in 2016.

The Monument has already survived two similar challenges in other district courts— *Massachusetts Lobstermen's Association v. Ross* and *Fehily v. Biden*—in which Proposed Intervenors intervened defensively. If the present challenge were to succeed where prior attempts have failed, it would reopen the Monument to commercial fishing and expose the area to irreversible damage. Proposed Intervenors have an interest in preventing that outcome and ensuring the continued protection of this national treasure.

---

[1] Federal Defendants take no position on this motion. Plaintiffs have advised Proposed Intervenors' counsel that they intend to oppose.

[2] *Available at* https://www.doi.gov/pressreleases/administration-leaders-applaud-president-bidens-restoration-national-monuments (accessed May 28, 2024).

1

## BACKGROUND

**I.    History of the Northeast Canyons and Seamounts Marine National Monument**

**A.    The Monument area and its scientific importance**

Off the coast of southern New England, three underwater canyons cut into the continental shelf break, rivaling the Grand Canyon in depth. Beyond the canyons lies a cluster of four extinct undersea volcanoes, known as seamounts. These dramatic landforms shape ocean-current patterns that create a three-dimensional biologic hotspot providing food, shelter, and nursery habitat to an exceptional range of sea life.

The area has attracted significant scientific attention. Proclamation No. 9496, 81 Fed. Reg. 65,161, 65,163 (Sept. 15, 2016). Scientists have found species here that have not been observed anywhere else on Earth. *Id.* at 65,162. Benthic (bottom) fauna—including deep-sea corals, sponges, and anemones—create the foundation for deep-sea ecosystems, providing food, spawning habitat, and shelter for complex communities of creatures that live on and around them. *Id.* at 65,161. Corals at these depths grow very slowly, sometimes over hundreds or thousands of years, making them acutely vulnerable to damage caused by extractive activities. *Id.* at 65,161, 65,162. The area is an important feeding ground for other species, too, including seabirds like the Atlantic Puffin; multiple species of whales, including endangered blue, sperm, sei, and fin whales; and endangered sea turtles. *Id.* at 65,162-63; Sewell Decl. ¶ 23.

 

*Blue whale and corals within the Monument. Sewell Decl. ¶¶ 21, 23*

Recognizing both the scientific importance and the fragility of this area, the Obama administration began evaluating it for permanent protection as a national monument in 2015. White House, *Fact Sheet: Creating the First Marine National Monument in the Atlantic Ocean* (Sept. 15, 2016).[3] The administration conducted an extensive public process with multiple regional stakeholder meetings, including with commercial fishing interests. *Id.* One hundred forty-five marine scientists sent a letter to the administration in support of the Monument. *Id.* Proposed Intervenors also publicly supported the Monument, as detailed in the attached declarations. *See infra* at 7-9.

### B.    The 2016 Proclamation

On September 15, 2016, pursuant to his authority under the Antiquities Act, 54 U.S.C. § 320301, President Obama issued a proclamation designating the Northeast Canyons and Seamounts Marine National Monument. *See* Proclamation No. 9496, 81 Fed. Reg. 65,161 ("2016 Proclamation"). The 2016 Proclamation described in detail "the canyons and seamounts themselves, and the natural resources and ecosystems in and around them," which it identified as objects of historic or scientific interest. *Id.* at 65,161. The Proclamation defined the Monument as two units separated by a transit corridor—the rectangular Canyons Unit and the triangular Seamounts Unit—which the President determined to be "the smallest area compatible with the proper care and management of the objects to be protected." *Id.* at 65,161, 65,163, 65,167.

---

[3] *Available at* https://obamawhitehouse.archives.gov/the-press-office/2016/09/15/fact-sheet-president-obama-continue-global-leadership-combatting-climate (accessed May 28, 2024).

To provide for the proper care and management of the objects of interest, the 2016 Proclamation prohibited commercial fishing within the Monument. *Id.* at 65,164-65.[4] Historically, there has been little commercial fishing activity within the Monument, *see* Sewell Decl. ¶ 13, but even minimal commercial fishing can cause significant damage. Deep-sea organisms tend to have longer lifespans and slower growth rates than their shallow-water counterparts, making them "extremely sensitive to disturbance from extractive activities." 2016 Proclamation, 81 Fed. Reg. at 65,161. Bottom-contact fishing gear—like the weighted traps used to catch lobster and red crabs and the trawl nets used to catch tilefish and whiting—can crush coral colonies that have been growing for hundreds of years. *See* Sewell Decl. ¶ 13; Proposed Answer ¶ 54. Higher in the water column, fishing gear can entangle and kill whales, dolphins, seabirds, and sea turtles. *Id.* Commercial fishing also reduces fish abundance, disrupts fish behavior, and alters the predator-prey balance, with ripple effects up and down the food chain. Sewell Decl. ¶ 13; Mahoney Decl. ¶ 37.

In March 2017, five commercial fishing industry groups filed a lawsuit in the U.S. District Court for the District of Columbia challenging the 2016 Proclamation. Their complaint—much like this one—asserted that the Antiquities Act did not apply to submerged lands in this part of the ocean, that living resources and ecosystems could not qualify for protection under the Act, and that the Monument was too large. Compl. ¶¶ 71-75, *Mass. Lobstermen's Ass'n v. Ross*, No. 17-cv-00406 (D.D.C. filed Mar. 7, 2017), ECF No. 1.

---

[4] The 2016 Proclamation's commercial fishing prohibition went into effect immediately, except for the American lobster and red crab fisheries, which were subject to a seven-year phase-out period. *Id.* at 65,165.

NRDC, CLF, CBD, and Mr. Klyver moved to intervene in that lawsuit to defend the Monument's legality. The district court granted their intervention motion and ultimately dismissed the fishing groups' complaint, holding that the Monument's designation was a valid exercise of the President's Antiquities Act authority. *See* Order, *Mass. Lobstermen's Ass'n*, No. 17-cv-00406 (D.D.C. Mar. 20, 2018) (granting intervention motion); *Mass. Lobstermen's Ass'n v. Ross*, 349 F. Supp. 3d 48 (D.D.C. 2018) (dismissing complaint). "[J]ust as President Roosevelt had the authority to establish the Grand Canyon National Monument in 1908," the district court concluded, "so President Obama could establish the Canyons and Seamounts Monument in 2016." *Mass. Lobstermen's Ass'n*, 349 F. Supp. 3d at 51. The D.C. Circuit affirmed, *Mass. Lobstermen's Ass'n v. Ross*, 945 F.3d 535 (D.C. Cir. 2019), and the U.S. Supreme Court denied the fishing groups' petition for a writ of certiorari. *Mass. Lobstermen's Ass'n v. Raimondo*, 141 S. Ct. 979 (2021).

### C.    The 2020 Proclamation

In June 2020, while the *Massachusetts Lobstermen's* litigation was pending, President Trump issued a proclamation revoking the commercial fishing prohibition in the Monument. Proclamation No. 10049, 85 Fed. Reg. 35,793 (June 5, 2020) ("2020 Proclamation"). Never in the Antiquities Act's century-long history had a President opened an entire national monument up to commercial extractive use, as the 2020 Proclamation purported to do. NRDC, CLF, CBD, and Mr. Klyver filed a lawsuit challenging the President's action as unlawful. Complaint, *Conservation L. Found. v. Trump*, No. 20-cv-01589 (D.D.C. filed June 17, 2020), ECF No. 1.

### D.    The 2021 Proclamation

In 2021, President Biden took office and issued an executive order initiating a review of the prior administration's rollbacks of national monuments, including Northeast Canyons and

Seamounts. Exec. Order No. 13990, 86 Fed. Reg. 7037, 7039 (Jan. 20, 2021). Proposed Intervenors called on the administration to restore the Monument's protections. *See* Sewell Decl. ¶ 30; Mahoney Decl. ¶ 26; Klyver Decl. ¶ 8. In October 2021, the President reinstated the ban on commercial fishing within the Monument. Proclamation No. 10287, 86 Fed. Reg. 57,349, 57,352 (Oct. 8, 2021) ("2021 Proclamation"). As a result, Proposed Intervenors voluntarily dismissed their lawsuit challenging the 2020 Proclamation. Notice of Voluntary Dismissal, *Conservation L. Found.*, No. 20-cv-01589 (D.D.C. filed Nov. 10, 2021), ECF No. 36.

In April 2022, two individual fishermen filed a lawsuit challenging the restored Monument, this time in the U.S. District Court for the District of New Jersey. *See* Compl., *Fehily v. Biden*, No. 22-cv-02120 (D.N.J. filed Apr. 12, 2022), ECF No. 1. The *Fehily* complaint advanced the same claims that had failed in the *Massachusetts Lobstermen's* case. *See generally id*. Once more, NRDC, CLF, CBD, and Mr. Klyver moved to intervene to defend the Monument's legality, and the court granted that motion. Order Granting Mot. to Intervene, *Fehily*, No. 22-cv-02120 (D.N.J. July 26, 2022), ECF No. 26. After jurisdictional discovery into the *Fehily* plaintiffs' allegations of harm, the plaintiffs voluntarily dismissed their lawsuit. Stip. of Dismissal, *Fehily*, No. 22-cv-02120 (D.N.J. filed Mar. 14, 2023), ECF No. 44.

In October 2023, the National Oceanic and Atmospheric Administration (NOAA) issued proposed regulations to codify the commercial fishing prohibition restored by the 2021 Proclamation and opened a public comment period. 88 Fed. Reg. 72,038 (Oct. 19, 2023). Proposed Intervenors NRDC and CLF submitted comment letters supporting the proposal. *See* Sewell Decl. ¶ 32; Mahoney Decl. ¶ 30. On February 16, 2024, NOAA issued its final rule and implementing regulations consistent with the commercial fishing prohibition found in the 2016 and 2021 Proclamations. 89 Fed. Reg. 12,282 (Feb. 16, 2024).

## II.    Plaintiffs' complaint

On April 12, 2024, a new set of plaintiffs—two commercial fishermen, Frank Green and Robert Conrad—filed the instant case. Compl. ¶¶ 21-31, ECF No. 1. Like the plaintiffs in *Massachusetts Lobstermen's* and *Fehily*, Plaintiffs seek a declaration that the President lacked authority to designate the Monument and an injunction barring Federal Defendants from enforcing the commercial fishing prohibition. *Id.* at 29-30. Plaintiffs here are represented by the same legal organization that has represented plaintiffs in both prior challenges to the Monument. *Compare id.* at 31, *with* Compl. at 16, *Mass. Lobstermen's Ass'n*, No. 17-cv-00406 (D.D.C. filed Mar. 7, 2017), ECF No. 1, *and* Compl. at 40, *Fehily*, No. 22-cv-02120 (D.N.J. filed Apr. 12, 2022), ECF No. 1. As of the date of this filing, the litigation is in its earliest stages, and no responsive pleadings or dispositive motions have been filed.

## III.   Proposed Intervenors

Proposed Intervenors are three environmental non-profit organizations and a professional naturalist whose interests would be harmed if the Court grants the relief Plaintiffs seek.

The <u>Natural Resources Defense Council</u> (NRDC) is a non-profit environmental membership organization with tens of thousands of members in states along the northeastern Atlantic seaboard. *See* Sewell Decl. ¶ 3. Ensuring the protection and long-term sustainability of ocean resources is a core part of NRDC's mission. *Id.* ¶¶ 4-5. NRDC began advocating for the protection of Northeast Canyons and Seamounts as a national monument in 2015, *id.* ¶¶ 11, 15-16, and it has remained actively engaged in supporting and defending the Monument since its establishment in 2016, *see id.* ¶¶ 18, 24-25, 30-32. Over the years, NRDC staff have created numerous reports, blogposts, videos, and science updates to share the Monument's wonder and beauty with NRDC's members and the general public. *Id.* ¶¶ 8-9, 11-14, 18, 21-27. NRDC has

supported the Monument on behalf of its members who study, use, and enjoy the Monument

area—including scientists, educators, and recreational bird- and whale-watchers. *Id.* ¶¶ 33-36.

The <u>Conservation Law Foundation</u> (CLF) is a non-profit membership organization

dedicated to protecting marine wildlife and their habitats as well as other coastal and ocean

resources in New England. Mahoney Decl. ¶¶ 3-5. CLF has thousands of members in New

England coastal states. *Id.* ¶ 3. CLF and its members have a particular interest in the protection of

scientifically important places in the ocean off New England, including the Monument, because

such areas increase the ocean's resilience to the stresses and changes associated with climate

change and serve as scientific reference sites. *Id.* ¶ 33. CLF's members include a scientist who

studies habitats and species within the Monument, and others who use, view, study, and enjoy

Monument resources outside its boundaries that benefit from its protection as a feeding ground,

migratory route, or overwintering area. *Id.* ¶¶ 35-36. CLF began advocating for the creation of

the Monument in 2015. *Id.* ¶ 9. Since that time, it has continued to engage through public

comment to the Obama, Trump, and Biden administrations; event planning; educational

outreach; and litigation. *Id.* ¶¶ 9-11, 14-16, 18, 20-22, 24, 26, 29-30.

The <u>Center for Biological Diversity</u> (CBD) is a non-profit environmental membership

organization whose primary mission is to preserve, protect, and restore biodiversity, native

species, ecosystems, and public lands. Sakashita Decl. ¶ 4. CBD has worked for years to ensure

the conservation and sound management of numerous marine species threatened by destructive

activities in our oceans, including unsustainable fishing practices. *Id.* ¶¶ 5, 10-17. CBD members

use the northwest Atlantic Ocean, including areas within the Monument, to view and study

marine wildlife. *Id.* ¶¶ 4, 18. CBD opposed the revocation of Monument protections during the

previous administration and advocated for their reinstatement, *id.* ¶¶ 7-9, and it has engaged in

public comment regarding the Monument's management since its 2021 restoration, *see* Sewell Decl. *id.* ¶ 32.

R. Zack Klyver owns an international ecotourism company called Flukes, Inc., that specializes in taking clients to see whales. Klyver Decl. ¶ 2. Until recently, he was the Science Director at Blue Planet Strategies, LLC, a consulting firm he co-founded in 2019 that uses science and law to help its clients solve ocean conservation problems around the world. *Id.* Prior to this, for 30 years he was the Lead Naturalist for Bar Harbor Whale Watch Co., located in Bar Harbor, Maine, where he continues to guide trips as a naturalist on a part-time basis. *Id.* ¶ 3. Mr. Klyver has guided over 3,000 trips and taken over 700,000 passengers to see the whales and other marine wildlife of the northwest Atlantic Ocean. *Id.* ¶ 4. He regularly uses the waters of the northwest Atlantic Ocean to view, study, and educate others about marine wildlife, including wildlife that depends upon the Monument as habitat and feeding ground, such as humpback, sperm, fin, and sei whales, and the Maine population of Atlantic puffins that nest in the summer near Bar Harbor and overwinter in the Monument. *Id.* ¶ 5. Mr. Klyver actively supported the creation of the Monument, including by speaking at a public hearing in Providence, Rhode Island, in September 2015, and he has continued to support the Monument by appearing at public educational events, writing op-eds, and submitting public comment letters since then. *Id.* ¶¶ 6-8.

All four Proposed Intervenors have gone to court three times previously to defend the Monument: first, by successfully intervening to defend the Monument in *Massachusetts Lobstermen's Association v. Ross*; second, by challenging the presidential rollback in *Conservation Law Foundation v. Trump*, and third, by intervening to defend the Monument again in *Fehily v. Biden*. *See supra* at 4-6. Proposed Intervenors seek to intervene here to defend the Monument for a fourth time.

## ARGUMENT

Proposed Intervenors meet the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a) or, alternatively, for permissive intervention under Rule 24(b).

## I.    Proposed Intervenors are entitled to intervene as of right

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), prospective intervenors must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *In re New York City Policing During Summer 2020 Demonstrations ("NYC Policing")*, 27 F.4th 792, 799 (2d Cir. 2022) (cleaned up); *see* Fed. R. Civ. P. 24(a)(2). Proposed Intervenors satisfy all four elements.

### A.    Proposed Intervenors' motion to intervene is timely

Proposed Intervenors' motion to intervene is timely. To determine timeliness, courts weigh: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *United States v. Pitney Bowes, Inc*., 25 F.3d 66, 70 (2d Cir. 1994). The present case is still in its earliest stages. The complaint was filed ten weeks ago, and Federal Defendants' answer deadline is still more than two months away. The existing parties have not yet filed any responsive pleadings, substantive motions, or other briefs. Proposed Intervenors' motion will therefore not prejudice existing parties or delay the resolution of this litigation. Proposed Intervenors, by contrast, face prejudice if the motion is denied (as discussed *infra* at 11-15). There are no unusual circumstances that would warrant a finding of untimeliness here. *See*

*Herdman v. Town of Angelica*, 163 F.R.D. 180, 185 (W.D.N.Y. 1995) ("no reason to find" a motion untimely when filed just ten weeks after the complaint).

### B.    Proposed Intervenors have cognizable interests at stake in this litigation

Rule 24(a) next requires that intervenors demonstrate a cognizable interest—one that is "direct, substantial, and legally protectable"—that "may be impaired" without intervention. *NYC Policing*, 27 F.4th at 799; *see* Fed. R. Civ. P. 24(a)(2). Proposed Intervenors NRDC, CLF, and CBD have cognizable interests in defending the Monument's legality and preserving its protection against commercial fishing for the benefit of their members and the general public, as demonstrated by their past advocacy and litigation efforts. Mr. Klyver has a cognizable interest based on his own study and use of Monument resources as a naturalist.[5]

As described in the attached declarations, all three Organizational Proposed Intervenors are membership organizations whose missions include preserving healthy ocean ecosystems for the edification and enjoyment of their members and the general public, preventing the harmful effects of extractive industries on fragile ocean resources, and protecting especially ecologically valuable marine areas as havens for scientific research and refugia where wildlife can recover and thrive. *See* Sewell Decl. ¶¶ 3-7; Mahoney Decl. ¶¶ 3-8; Sakashita Decl. ¶¶ 4-5, 10.

Consistent with their missions, Organizational Proposed Intervenors have engaged in many years of advocacy efforts to establish and defend the Monument. Proposed Intervenors

---

[5] As in previous rounds of litigation over this Monument, Proposed Intervenors expect to seek the same disposition as Federal Defendants: dismissal of the complaint or summary judgment affirming the legality of the challenged Proclamation. They therefore need not separately show standing. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 675 n.6 (2020) (intervenors who satisfy Rule 24(a)(2) need not "independently demonstrate Article III standing" unless they seek "relief that is broader than or different from" the relief sought by another party with Article III standing).

NRDC and CLF called on President Obama to designate Northeast Canyons and Seamounts as a national monument starting in 2015, including by submitting written public comments, participating in stakeholder meetings, and/or publishing blogs and reports to inform their members. Sewell Decl. ¶¶ 11-16; Mahoney Decl. ¶¶ 9-11. During the Trump administration, all three Organizational Proposed Intervenors submitted public comments, published op-eds, and/or published blogs and reports opposing the revocation of Monument protections. Sewell Decl. ¶¶ 24-26; Mahoney Decl. ¶¶ 18, 20; Sakashita Decl. ¶¶ 7-8. From 2021 onward, as the Biden administration considered restoring the Monument's protections, Organizational Proposed Intervenors submitted written public comments, participated in stakeholder meetings, and/or published online materials to help their members, the administration, and the general public understand the necessity of safeguarding this special area. Sewell Decl. ¶¶ 29-30, 32; Mahoney Decl. ¶ 26; Sakashita Decl. ¶ 8. Most recently, Proposed Intervenors provided comments in support of NOAA's proposed regulations and the U.S. Fish and Wildlife Service's proposed Monument management plan. Sewell Decl. ¶ 32; Mahoney Decl. ¶ 30.

Further, the Monument's protections directly benefit Organizational Proposed Intervenors' members. NRDC, CLF, and CBD have members—scientists, educators, and whale- and bird-watchers—who travel to the Monument and nearby areas to research, view, and appreciate its wildlife. Sewell Decl. ¶¶ 33-35; Mahoney Decl. ¶¶ 34-36; Sakashita Decl. ¶¶ 4, 18. The Monument's protections benefit them by shielding this area from the disruption and damage caused by commercial fishing; preserving the health, beauty, and unusually high research value of the ecosystems and wildlife found there; and enabling them to study, view, and enjoy the Monument area as the only highly protected marine area in the U.S. Atlantic Ocean. Sewell Decl. ¶¶ 36-37; Mahoney Decl. ¶¶ 32-35, 37; Sakashita Decl. ¶¶ 18-19.

12

Similarly, as a naturalist who observes, studies, and educates others about the ecology and sea life in the northwest Atlantic Ocean, Mr. Klyver has a direct and specific interest in maintaining the Monument's protections—particularly because of their importance to the whales and puffins on which he focuses his professional and recreational activities. *See* Klyver Decl. ¶¶ 2-5, 11-15. The Monument's protections benefit Mr. Klyver's interests in viewing, studying, and educating others about whales and seabirds by providing those species with a stable, protected source of food, shelter, and passage for their migrations and movements, reducing the negative effects of commercial fishing and other extractive activities, and helping to ensure that healthy populations are maintained year after year. *Id*. ¶¶ 16-18. The Monument's protections also facilitate scientific investigation and thus provide Mr. Klyver with information to use when educating the public, commenting on agency decisions, and advising decision-makers about marine life in the northwest Atlantic Ocean, as he does frequently in his capacity as a naturalist and as a member of the Atlantic herring advisory panel for the New England Fishery Management Council. *Id*. ¶¶ 17-18. Mr. Klyver publicly supported the Monument's creation and has spoken and written in support of the Monument on many occasions since then. *Id.* ¶¶ 6-8.

Finally, over the past seven years, all four Proposed Intervenors have engaged in multiple rounds of litigation to protect the Monument. As described above, Proposed Intervenors intervened to defend the Monument in *Massachusetts Lobstermen's Association v. Ross*; challenged the presidential rollback of protections in *Conservation Law Foundation v. Trump*, and intervened to defend the Monument again in *Fehily v. Biden*. *See supra* at 4-6.

In sum, Proposed Intervenors' years of advocacy to protect and defend the Monument demonstrate that they satisfy Rule 24's "interest" requirement. Fed. R. Civ. P. 24(a)(2). As in *Herdman*, Proposed Intervenors' sustained efforts demonstrate that protecting the Monument is a

13

"clear" and "legitimate interest," satisfying Rule 24(a)(2). *Herdman*, 163 F.R.D. at 183, 187 (environmental group that helped pass an ordinance was entitled to intervene in lawsuit challenging that ordinance because it had "a clear interest in the continuing constitutional viability of that law").

### C.    If successful, Plaintiffs' action may impair Proposed Intervenors' interests in protecting the Monument from harm

An applicant for intervention as of right must be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2); *see NYC Policing*, 27 F.4th at 799.

Proposed Intervenors satisfy this element. If the Court awards Plaintiffs the relief they seek, the Monument's core protection—which Proposed Intervenors have worked extensively to realize and defend, and which directly benefits Proposed Intervenors and their members—would be lost. Allowing commercial fishing in the Monument would alter the area's ecology, impair its value as a scientific research and reference site, and jeopardize the Monument's objects. Sewell Decl. ¶¶ 11-13; Mahoney Decl. ¶ 37; Sakashita Decl. ¶¶ 15, 18-19; Klyver Decl. ¶¶ 16-18. Organizational Proposed Intervenors' members who are scientists would be harmed by no longer being able to study the Monument as a closed marine area—the only highly protected area in the U.S. Atlantic—free of the confounding influence of and damage from commercial fishing activity. Sewell Decl. ¶¶ 7, 33-34, 36-37; Mahoney Decl. ¶¶ 32-33, 35, 37. Similarly, Mr. Klyver would be harmed by the loss of valuable, high-quality scientific research conducted here, on which he relies to educate the public and advise officials on governance matters in the northwest Atlantic Ocean. Klyver Decl. ¶¶ 17-18. And Proposed Intervenors and their members who use the Monument and surrounding areas for whale- and bird-watching and other wildlife viewing would lose their ability to enjoy these areas without the disruption and damage caused by

commercial fishing activity. Sewell Decl. ¶¶ 33, 35-36; Mahoney Decl. ¶¶ 34-37; Sakashita Decl. ¶¶ 18-19; Klyver Decl. ¶ 16.

Thus, Proposed Intervenors' protectable interests "may be impaired" by the disposition of this case. *NYC Policing*, 27 F.4th at 799. Considering similar facts, other courts have granted intervenor status to environmental groups seeking to defend national monuments against legal challenges—including, as discussed *supra* at 4-6, these same Proposed Intervenors in two rounds of prior litigation involving Northeast Canyons and Seamounts. *See* Minute Order, *Mass. Lobstermen's Ass'n*, No. 17-cv-00406 (D.D.C. Mar. 20, 2018) (granting intervention to Proposed Intervenors in first fishing industry challenge to Northeast Canyons and Seamounts); Order Granting Mot. to Intervene, *Fehily*, No. 22-cv-02120 (D.N.J. July 26, 2022), ECF No. 26 (granting intervention to Proposed Intervenors in second fishing industry challenge to Northeast Canyons and Seamounts); *see also Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1253-54, 1256 (10th Cir. 2001) (granting intervention to conservation groups in litigation challenging Grand Staircase-Escalante National Monument, recognizing that the monument "provide[d] greater protection for the intervenors' interests than prior" land management plans did). Just so here: because the disposition of this action may impair Proposed Intervenors' interests in the Monument, Proposed Intervenors satisfy Rule 24(a)'s impairment-of-interest requirement.

## D.    Federal Defendants may not adequately represent Proposed Intervenors' interests

Finally, applicants for intervention as of right must show "that representation of [their] interest" by the existing parties "'may be' inadequate." *NYC Policing*, 27 F.4th at 803 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)); *see* Fed. R. Civ. P. 24(a)(2). In general, "the burden of making that showing should be treated as minimal." *NYC Policing*, 27 F.4th at 803 (cleaned up); *accord Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 181

15

(2022) (recognizing *Trbovich*'s holding that the adequacy test presents "only a minimal challenge" to proposed intervenors). Where the applicant and an existing party share "the same ultimate objective," though, the Second Circuit has "demanded a more rigorous showing of inadequacy." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001).[6]

Here, although Proposed Intervenors and Federal Defendants presently seek the same disposition of this case, their interests and objectives are not identical. Even assuming a presumption of adequacy applies, however, this presumption is rebutted by the history of litigation between these parties, and the likelihood that Federal Defendants will neither advance Proposed Intervenors' specific pro-conservation interests nor raise "all colorable contentions" that Proposed Intervenors themselves wish to present. *Herdman*, 163 F.R.D. at 190.

First, the litigating positions of Proposed Intervenors and Federal Defendants have diverged in past Antiquities Act litigation, including when Proposed Intervenors and Federal Defendants have been on opposite sides of the "v" in litigation concerning this very Monument. In 2020, all four Proposed Intervenors sued the federal government over the 2020 Proclamation, which unlawfully stripped the Monument of its commercial fishing prohibition. *See supra* at 5-6

---

[6] The Supreme Court in *Berger* questioned, but did not decide, whether such presumptions of adequacy are generally consistent with Rule 24. *Berger*, 597 U.S. at 195-96. Acknowledging that some circuits have adopted a presumption of adequacy "where a movant's interests are identical to those of an existing party," the Court observed (in dicta) that such a presumption—assuming it is appropriate—"applies only when interests 'overlap fully.'" *Id*. at 196-97 (cleaned up); *see also id.* at 196 (favorably discussing "related," but not "identical," interests of government party and private intervenor in *Trbovich*).

The Second Circuit has also required a heightened showing of inadequacy from movants seeking to intervene alongside the government when the government affirmatively sues to enforce a law in *parens patriae*. *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984). That *parens patriae* doctrine does not apply, however, where the government is *defending* the validity of a government action, as here. *See Herdman*, 163 F.R.D. at 190.

(discussing *Conservation Law Foundation v. Trump*). Proposed Intervenors voluntarily dismissed that lawsuit after President Biden restored the Monument's protections, *see supra* at 6, but Federal Defendants never expressly disclaimed the assertions of legal authority advanced in their unresolved motion to dismiss. *See* Mem. Supp. Fed. Defs.' Mot. to Dismiss at 24-27, *Conservation L. Found.*, No. 20-cv-01589 (D.D.C. filed Aug. 31, 2020), ECF No. 12 (arguing that president may revoke monument protections). Proposed Intervenors and Federal Defendants could once again find their positions diverging here. *See Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973-74 (3d Cir. 1998) (concluding, based on history in related litigation, that it was "not realistic to assume that the [government's] programs will remain static or unaffected by unanticipated policy shifts").

Second, even if one assumes the Federal Defendants' objectives will never shift over the course of this litigation, there is good reason to doubt that Federal Defendants will advance "all colorable contentions" that Proposed Intervenors wish to present. *Herdman*, 163 F.R.D. at 190. In *Fehily*, Proposed Intervenors asserted a collateral estoppel defense, while Federal Defendants did not. *Compare* Fed. Defs.' Answer to Pls.' First Am. Compl. at 25, *Fehily*, No. 22-cv-02120 (D.N.J. filed Sept. 26, 2022), ECF No. 39, *with* Def.-Intervenors' Answer to Pls.' First Am. Compl. at 33, *Fehily*, No. 22-cv-02120 (D.N.J. filed Sept. 26, 2022), ECF No. 40.[7] Here, too, Proposed Intervenors have included a collateral estoppel defense in their Proposed Answer. *See* Proposed Answer at 25. But to date, there is no indication that Federal Defendants will pursue that same defense.

---

[7] Discovery revealed that defense was indeed colorable. Ultimately, the fishermen plaintiffs voluntarily dismissed their complaint, *see supra* at 6, stipulating that they would not attempt to "litigate through a proxy or proxies" the claims they had advanced there. Stip. of Dismissal at ¶ 3, *Fehily*, No. 22-cv-02120 (D.N.J. filed Mar. 14, 2023), ECF No. 44.

Third, Federal Defendants may advance threshold justiciability defenses with which Proposed Intervenors disagree—as they have done in previous rounds of litigation over this Monument. In *Conservation Law Foundation* and *Massachusetts Lobstermen's*, the federal defendants (unlike Proposed Intervenors) argued for sharp limits on the availability and scope of judicial review of presidential proclamations. *See* Mem. Supp. Fed. Defs.' Mot. to Dismiss at 33-34, *Conservation L. Found.*, No. 20-cv-01589 (D.D.C. filed Aug. 31, 2020), ECF No. 12; Intervenors' Resp. in Supp. of Fed. Defs.' Mot. to Dismiss at 9-14, *Mass. Lobstermen's Ass'n*, No. 17-cv-00406 (D.D.C. filed Apr. 30, 2018), ECF No. 33 (agreeing with federal defendants that fishing groups' complaint should be dismissed but disagreeing over availability and scope of judicial review, applicability of Rule 12(b)(1) versus Rule 12(b)(6), and nature of president's discretion under the Antiquities Act). In *Fehily*, the federal defendants asserted ripeness and statute-of-limitations defenses that Proposed Intervenors chose not to assert. *Compare* Fed. Defs.' Answer to Pls.' First Am. Compl. at 25, *Fehily*, No. 22-cv-02120 (D.N.J. filed Sept. 26, 2022), ECF No. 39, *with* Def.-Intervenors' Answer to Pls.' First Am. Compl. at 32-33, *Fehily*, No. 22-cv-02120 (D.N.J. filed Sept. 26, 2022), ECF No. 40.

Fourth, Proposed Intervenors' substantive positions on the merits may differ from Federal Defendants' in salient ways. Proposed Intervenors have a specific interest in preserving the Monument's protections *permanently*, and they have accordingly argued that monument protections are revocable only by Congress, not by future presidents. *See* Compl. ¶ 70, *Conservation L. Found.*, No. 20-cv-01589 (D.D.C. filed June 17, 2020), ECF No. 1. Federal Defendants, by contrast, have institutional interests in maximizing presidential flexibility to balance competing interests and "broader public-policy implications." *Berger*, 597 U.S. at 196. *See, e.g.*, 2016 Proclamation, 81 Fed. Reg. at 65,165 (allowing fishing for American lobster and

red crab to phase out over seven years); 2020 Proclamation, 85 Fed. Reg. at 35,795 (purporting to revoke the prohibition on commercial fishing); Fed. Defs.' Mem. in Supp. of Mot. to Dismiss at 24-27, *Conservation L. Found.*, No. 20-cv-01589 (D.D.C. filed Aug. 31, 2020), ECF No. 12 (arguing that the Antiquities Act "grants the President substantial flexibility," including flexibility to eliminate protections). As a result, Federal Defendants may continue to disagree with Proposed Intervenors about the proper interpretation of terms in the Antiquities Act—including the President's power to "reserve" lands and the meaning of the "smallest area" clause, 54 U.S.C. § 320301(b), which are once again at issue in this litigation. *See* Compl. ¶¶ 13, 41 & Count IV, ECF No. 1.

In short, Federal Defendants' interests "are not so similar" to Proposed Intervenors' "that adequacy of representation is assured." *NYC Policing*, 27 F.4th at 804 (cleaned up). Because Proposed Intervenors and Federal Defendants have a track record of concrete differences in litigation positions concerning this very Monument, Proposed Intervenors have "met [their] burden to demonstrate that the [Federal Defendants'] representation may be inadequate." *Id*. at 803. Proposed Intervenors satisfy Rule 24(a)'s final criterion and therefore meet the standard for intervention as of right.

## II.    Alternatively, the Court should permit Proposed Intervenors to intervene permissively

If the Court denies intervention as of right, Proposed Intervenors request leave to intervene under Federal Rule of Civil Procedure 24(b). A district court may grant a motion for permissive intervention if the application is "timely" and if the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In considering whether to grant permissive intervention, the court "must consider whether the

19

intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Proposed Intervenors satisfy the criteria for permissive intervention.

First, as discussed above, Proposed Intervenors' motion is timely. Fed. R. Civ. P. 24(b)(1); *see supra* at 10-11. Second, Proposed Intervenors do not intend to assert any cross- or counter-claims. They intend to oppose Plaintiffs' claims and requests for relief and to raise certain defenses, each of which necessarily share "common question[s] of law or fact" with the main action. Fed. R. Civ. P. 24(b)(1)(B); *see* Proposed Answer at 24-25 (Defenses). Third, Proposed Intervenors' involvement will cause no undue delay or prejudice to the existing parties. Fed. R. Civ. P. 24(b)(3). If the Court grants intervention, Proposed Intervenors intend to work with the other parties toward the efficient adjudication of the case. And, in light of their deep familiarity with the legal and factual background of the Monument, Proposed Intervenors submit that their participation will helpfully "provide this Court with a fuller picture" of the issues at stake in this litigation. *United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 419 (S.D.N.Y. 2018).

Given the Proposed Intervenors' demonstrated interest in preserving the Monument's protections, the early stage of the litigation, and the lack of any prejudice to the existing parties, the Court should at a minimum allow permissive intervention.

## CONCLUSION

For the reasons set forth above, Proposed Intervenors request that the Court grant their motion to intervene as of right or, in the alternative, to intervene permissively.

Dated: May 29, 2024                    Respectfully submitted,

*s/ Lauren P. Phillips*
Lauren P. Phillips
NATURAL RESOURCES DEFENSE COUNCIL
40 W. 20th Street, 11th Floor

New York, NY 10011
Tel.: (212) 727-2700
E-mail: lphillips@nrdc.org
*Counsel for Natural Resources Defense Council*

Katherine Desormeau*
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter Street, 21st Floor
San Francisco, CA 94104
Tel.: (415) 875-6100
E-mail: kdesormeau@nrdc.org
*Counsel for Natural Resources Defense Council*

*s/ Erica Fuller*
Erica Fuller*
Chloe Fross*
CONSERVATION LAW FOUNDATION
62 Summer Street
Boston, MA 02110
Tel.: (617) 850-1727
E-mail: efuller@clf.org
E-mail: cfross@clf.org
*Counsel for Conservation Law Foundation*

*s/ Kristen Monsell*
Kristen Monsell*
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Tel.: (510) 844-7137
E-mail: kmonsell@biologicaldiversity.org
*Counsel for Center for Biological Diversity and R. Zack Klyver*

\* *Applications to appear* pro hac vice *forthcoming*