UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

FRANK GREEN and ROBERT CONRAD,

                Plaintiffs,

      v.

JOSEPH R. BIDEN, JR., *et al.*,

                Defendants,

      and

NATURAL RESOURCES DEFENSE COUNCIL,
INC., CONSERVATION LAW FOUNDATION,
CENTER FOR BIOLOGICAL DIVERSITY, and
R. ZACK KLYVER,

        Proposed Defendant-Intervenors.

-------------------------------------------------------------------

**MEMORANDUM & ORDER**
24-CV-1975 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Frank Green and Robert Conrad filed the above-captioned action on March 18, 2024, against President Joseph R. Biden Jr., Secretary of Commerce Gina M. Raimondo, Secretary of the Interior Deb Haaland, and Under Secretary of Commerce for Oceans and Atmosphere and National Oceanic and Atmospheric Association (the "NOAA") Administrator Richard W. Spinrad in their official capacities. Plaintiffs allege violations of the Antiquities Act, 54 U.S.C. § 320301(a)–(b); the separation of powers clause of Article I of the U.S. Constitution, U.S. Const. art. I, § 1; section 706(2)(C) of the Administrative Procedure Act, 5 U.S.C. §

706(2)(C); and section 1855(f) of the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1855(f).[1]

On May 29, 2024, the Natural Resources Defense Council, Inc. (the "NRDC"), Conservation Law Foundation (the "CLF"), Center for Biological Diversity (the "CBD"), and R. Zack Klyver (collectively, the "Proposed Intervenors") moved to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure.[2] For the reasons set forth below, the Court grants Proposed Intervenors' motion for permissive intervention.

## I. Background

Plaintiffs are commercial fishermen who allege that they will be subject to criminal and civil penalties due to the commercial fishing ban on the territory off the coast of southern New England that President Biden designated as the Northeast Canyons and Seamounts Marine National Monument (the "Monument"). (Compl. ¶¶ 1, 2, 4, 6, 35, 58.) The proclamation designating the Monument imposes criminal fines and jail time on individuals who fish within the Monument area. (*Id.* ¶ 4.) The National Marine Fisheries Service (the "NMFS"), relying exclusively on the commercial fishing ban prescribed by the proclamation, subsequently issued the Seamounts Regulation likewise banning commercial fishing in the Monument area. (*Id.* ¶¶ 5–7.)

Plaintiffs argue that President Biden did not have the authority under the Antiquities Act to designate the Monument, and that even if the designation was within President Biden's

---

[1] Plaintiffs sued Defendants in their official capacities for issuing the proclamation or regulation Plaintiffs challenge, or for being charged with administering the same. (Compl. ¶ 32–35, Docket Entry No. 1.)

[2] (Proposed Intervenors' Mem., Docket Entry No. 28; Pls.' Opp'n, Docket Entry No. 30; Proposed Intervenors' Reply, Docket Entry No. 29.)

2

authority, the Antiquities Act did not "delegate to the President the power to ban commercial fishing." (*Id.* ¶¶ 10–14.) Plaintiffs also argue that the Seamounts Regulation is unlawful because the NMFS relied on President Biden's proclamation to ban fishing in the Monument area. (*Id.*) Finally, Plaintiffs contend that even if President Biden's proclamation is lawful, the NMFS' ban is still unlawful because NMFS did not follow legislatively prescribed procedures NMFS must use before it decides to ban commercial fishing in an area. (*Id.* ¶ 15.)

Proposed Intervenors are non-profit environmental organizations and a professional naturalist. (Proposed Intervenors' Mem. 7.) The NRDC has thousands of members in states along the northeastern Atlantic seaboard with a mission to ensure the protection and long-term sustainability of the ocean's resources. (*Id.*) The CLF is also a membership-based organization in New England dedicated to protecting marine wildlife, their habitats, and other coastal and ocean resources. (*Id.* at 8.) The CBD's primary mission is to "preserve, protect, and restore biodiversity, native species, ecosystems, and public lands." (*Id.*) All three organizations advocated for and participated in the designation of the Monument and have staff or members who currently study, use, and enjoy the Monument area. (*Id.* at 7–8.) R. Zack Klyver is a naturalist and owner of an international ecotourism company who spent thirty years leading trips to see whales and marine wildlife in the Atlantic Ocean. (*Id.* at 9.) He has been a long-time advocate for and supporter of the Monument. (*Id.*)

The Proposed Intervenors have already been parties to three previous federal district court cases involving the Monument. The first case, *Massachusetts Lobstermen's Association v. Ross*, was brought by associations of commercial fishermen against President Obama's 2016 designation of the Northeast Canyons and Seamounts National Marine and the ban on commercial fishing within the Monument area. *See* Complaint at 1–2, *Mass. Lobstermen's Ass'n*

3

*v. Ross*, 349 F. Supp. 3d 48 (D.D.C. 2018) (No. 17-CV-406).  Proposed Intervenors intervened as defendants in that case.  (Order granting Motion to Intervene, *Mass. Lobstermen's Ass'n v. Ross*, No. 17-CV-406 (D.D.C. Mar. 20, 2018).)  The district court granted the defendants' motion to dismiss, and the D.C. Circuit affirmed the decision.  *Mass. Lobstermen's Ass'n v. Ross*, 349 F. Supp. 3d 48, 68 (D.D.C. 2018), *aff'd as modified*, 945 F.3d 535 (D.C. Cir. 2019), *cert. denied*, 141 S. Ct. 979 (2021).

In the second lawsuit, *Conservation Law Foundation v. Trump*, the plaintiffs commenced action after President Trump's June 5, 2020 proclamation revoking the Monument designation and re-opening the Monument area to commercial fishing.  *See* Complaint at 1–2, *Conservation Law Found. v. Trump*, No. 20-CV-1589 (D.D.C. June 17, 2020).  Proposed Intervenors alleged that President Trump's revocation of the Monument was unlawful under the Antiquities Act.  *Id.*  Before briefing on the defendants' motion to dismiss was completed, President Biden issued a proclamation restoring the Northeast Canyons and Seamounts Marine National Monument, as well as the commercial fishing ban in the Monument area.  (Plaintiffs' Notice of Voluntary Dismissal without Prejudice, *Conservation Law Found. v. Trump*, No. 20-CV-1589 (D.D.C. Nov. 10, 2021) , Docket Entry No. 36.)  Plaintiffs subsequently voluntarily dismissed the case.  (Order granting dismissal without prejudice, *Conservation Law Found. v. Trump*, No. 20-CV-1589 (D.D.C. November 10, 2021).)

The third lawsuit, *Fehily v. Biden*, was brought by commercial fishermen challenging President Biden's designation of the Monument and the commercial fishing ban within the Monument area.  *See* Complaint at 1–2, *Fehily v. Biden*, No. 22-CV-2120 (D.N.J. Apr. 12, 2022).  Proposed Intervenors again intervened as defendants in that case.  (Order granting Motion to Intervene, *Fehily v. Biden*, No. 22-CV-2120 (D.N.J. July 26, 2022), Docket Entry No.

4

26.) The parties voluntarily dismissed the case shortly after defendants filed responsive pleadings. (Order granting dismissal without prejudice, *Fehily v. Biden*, No. 22-CV-2120 (D.N.J. Mar. 14, 2023), Docket Entry No. 44.)

## II. Discussion

### a. Standard of review

Rule 24(a) of the Federal Rules of Civil Procedure allows intervention as of right under certain circumstances. It provides in pertinent part that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *see also In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (quoting Fed. R. Civ. P. 24(a)); *Penn-Star Ins. Co. v. McElhatton*, 818 F. App'x 67, 70 (2d Cir. 2020) (same); *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (same). To establish intervention as of right pursuant to Rule 24(a)(2), an intervenor must show that "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *XL Specialty Ins. Co. v. Lakian*, 632 F. App'x 667, 669 (2d Cir. 2015) (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006)); *see also CWCapital Cobalt Vr Ltd. v. U.S. Bank Nat'l Ass'n*, 790 F. App'x 260, 262 (2d Cir. 2019) (quoting *MasterCard Int'l Inc.*, 471 F.3d at 389). "The '[f]ailure to satisfy any one of these [four] requirements is a sufficient ground to deny the

application.'" *Penn-Star Ins. Co.*, 818 F. App'x at 70 (alterations in original) (emphasis omitted) (quoting *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 241 (2d Cir. 2006)); *Harris-Clemons v. Charly Trademarks Ltd.*, 751 F. App'x 83, 85 (2d Cir. 2018) ("If the party fails to satisfy any one of the factors, the application for intervention must be denied." (citing *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996))).

Rule 24(b) of the Federal Rules of Civil Procedure allows a court to exercise its discretion and permit intervention under certain circumstances. It provides in pertinent part that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also Extenet Sys., LLC v. Village of Kings Point*, No. 22-CV-1265, 2023 WL 4044076, at *1 (2d Cir. June 16, 2023) ("Rule 24(b) . . . provides that a district court *may* permit an individual to intervene when he asserts 'a claim or defense that shares with the main action a common question of law or fact.'" (quoting Fed. R. Civ. P. 24(b))); *Penn-Star Ins. Co.*, 818 F. App'x at 70 (same); *Griffin v. Sheeran*, 767 F. App'x 129, 133 (2d Cir. 2019) (same); *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (same). "'In exercising its discretion,' the court must 'consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties,' . . . 'the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Citizens Against Casino Gambling in Erie Cnty. v. Hogen*, 417 F. App'x 49, 50 (2d Cir. 2011) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)). Permissive intervention is wholly within the court's discretion. *See Extenet Sys., LLC*, 2023 WL

6

4044076, at *2 ("When a district court denies a request for permissive intervention, our review is 'particularly deferential'") (quoting *AT & T Corp v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005); *Penn-Star Ins. Co.*, 818 F. App'x at 70 ("Rule 24(b) . . . provides for permissive intervention, at the discretion of the court . . . ."); *St. John's Univ., N.Y. v. Bolton*, 450 F. App'x 81, 84 (2d Cir. 2011) ("A district court has broad discretion under Rule 24(b) to determine whether to permit intervention . . . .").

      b.   **Intervention as of right**

Plaintiffs do not dispute that Proposed Intervenors' motion is timely, that they have an interest in the subject of this litigation, and that the outcome of this litigation may impair those interests. (Pls.' Opp'n 3; Proposed Intervenors' Reply 1.) The Court therefore only addresses the parties' arguments about whether Defendants "adequately represent" Proposed Intervenors' interests.

The Proposed Intervenors argue that there is no adequacy of representation because (1) Proposed Intervenors and Defendants "have diverged in past Antiquities Act litigation," (*see* Proposed Intervenors' Mem. 16), (2) Defendants will not advance "all colorable contentions" Proposed Intervenors plan to introduce, (*id.* at 17 (quoting *Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Env't Conservation*, 834 F.2d 60, 62 (2d Cir. 1987))), (3) Defendants may advance threshold justiciability arguments Proposed Intervenors oppose, (*id.* at 18), and (4) Proposed Intervenors and Defendants have different substantive merits positions. (*Id.*) First, Proposed Intervenors argue that Defendants and Proposed Intervenors' positions might again diverge because Defendants "never expressly disclaimed the assertions of legal authority" Defendants asserted in prior litigation. (*Id.* at 17.) Second, Proposed Intervenors plan to assert a collateral estoppel defense, which Defendants do not propose and declined to raise in *Fehily v. Biden*. (*Id.*;

7

*see also* Defs.' Answer 24, Docket Entry No. 31.)  Third, Proposed Intervenors note that, in previous litigation, Defendants have taken positions on judicial review and standing issues with which Proposed Intervenors disagree.  (Proposed Intervenors' Mem. 18.)  Finally, Proposed Intervenors contend that their argument that monument protections are only revocable by Congress differs from Defendants' argument that emphasizes maintaining presidential "flexibility" with regard to designating monuments.  (*Id.* at 18.)

Plaintiffs argue that they are entitled to a presumption of adequacy of representation because Proposed Intervenors and Defendants have the same "ultimate objective," which creates a presumption of adequacy Proposed Intervenors can only overcome by proving "collusion, nonfeasance, adversity of interest, or incompetence" by the aligned party.  (Pls.' Opp'n 4 (citing *Great Atl. & Pac. Tea Co. v. Town of E. Hampton*, 178 F.R.D. 39, 43 (E.D.N.Y. 1998)).)  Plaintiffs also argue that the fact that Defendants have taken different legal positions regarding the Monument designation "ignores the reality that the priorities of the Federal Government change from presidential administration to administration" and is insufficient to overcome the presumption of adequacy.  (*Id.* at 6–7.)  Plaintiffs further contend that Proposed Intervenors' "different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy" is insufficient to overcome the presumption.  (*Id.* at 9 (quoting *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999)).)  Plaintiffs note that Proposed Intervenors could intervene if Defendants' position changes in the future.  (*Id.* at 13.)  They conclude that if Proposed Intervenors' motion is granted, the Court should require the Intervenors to confer with Defendants prior to filing substantive motions, bar Intervenors from asserting claims or defenses that the original Defendants did not request, and prohibit Intervenors from engaging in discovery without the Court's approval.  (*Id.* at 16–17.)

"While the burden to demonstrate inadequacy of representation is generally speaking 'minimal,' [the Second Circuit has] demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (first quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); and then citing *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990)); *see also U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) ("The applicant must at least overcome the presumption of adequate representation that arises when it has the same ultimate objective as a party to the existing suit."). The Supreme Court has recently instructed that "a presumption of adequate representation in cases where a movant's interests are identical to those of an existing party" requires that the interests "overla[p] fully." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196–97 (2022) (alteration in original). Although not an exhaustive list, the Second Circuit has held that "evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy" when there is an "identity of interest between the putative intervenor and an existing party to the action." *Butler*, 250 F.3d at 180 (citing *United States v. Int'l Bus. Machs. Corp.*, 62 F.R.D. 530, 538 (S.D.N.Y. 1974)); *see also Neversink Gen. Store v. Mowi USA, LLC*, No. 20-CV-9293, 2021 WL 1930320, at *5 (S.D.N.Y. May 13, 2021) ("The [Second] Circuit has not set forth an 'exhaustive list' of what may suffice to overcome th[e] presumption [of adequate representation], but generally 'evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy.'") (quoting *Butler*, 250 F.3d at 180); *St. John's Univ., N.Y.*, 450 F. App'x at 84 ("[W]e have previously stated that 'when there is an identi[t]y of interest between a putative intervenor and an existing party to the action,' a 'presumption of adequate representation' attaches in the

9

absence of 'evidence of collusion, adversity of interest, nonfeasance, or incompetence.'" (quoting *Butler*, 250 F.3d at 180)). Courts often look to whether there is a true divergence of interests or an actual impediment to a named plaintiff's representation, such as a standing issue or that a named plaintiff settled their claims. *See, e.g.*, *Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) ("Given that [a named plaintiff] has settled his individual claim, it is apparent that he can no longer adequately represent the interests of the proposed class. Therefore, [proposed intervenor] is permitted to intervene as of right.").

The Court finds that Proposed Intervenors are adequately represented in this litigation and have failed to rebut that presumption of adequacy.

### i.  Plaintiffs are entitled to a presumption of adequacy

Proposed Intervenors concede that they "will likely share" Defendants' ultimate objective of dismissing Plaintiffs' lawsuit.[3] (Proposed Intervenors' Reply 1.) Accordingly, the Second

---

[3] Proposed Intervenors argue that because their interests are not identical to Defendants' interests, the Court should apply the less demanding "same ultimate objective" presumption under *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978), rather than the more rigorous "identity of interest" presumption from *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). (Proposed Intervenors' Reply 6.) They argue that the burden on the moving party remains "minimal" under *Brennan*, while the *Butler* presumption requires intervenor applicants to prove "collusion, nonfeasance, adversity of interest, or incompetence" by existing parties to successfully rebut it. (*Id.* at 3–4.) Proposed Intervenors contend that Defendants conflate the *Butler* and *Brennan* standards by arguing that because Proposed Intervenors share the same ultimate objective as Defendants, they are subject to the "arduous" *Butler* presumption requiring them to show collusion, nonfeasance, adversity of interest, or incompetence to intervene. (*Id.*; Pls.' Opp'n 4.)

First, under Second Circuit case law, it is not clear that there are two distinct presumptions depending on whether the intervenor applicant has an identity of interests or merely a shared ultimate objective with the existing party. *See, e.g.*, *Extenet Sys., LLC, v. Vill. of Kings Point*, No. 22-CV-1265, 2023 WL 4044076, at *2 (2d Cir. June 16, 2023) ("Though in general an intervenor's burden to demonstrate the inadequacy of a named party's representation is minimal, we have demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective, *e.g.*, an identity of interest.") (internal quotation omitted). Second, some district courts in this circuit have

10

Circuit has instructed that a "more rigorous showing of inadequacy" is required. *See Butler*, 250 F.3d at 179 ("[W]e have demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective"); *see also High Farms, LLC v. King*, No. 16-CV-736, 2021 WL 1137995, at *14 (E.D.N.Y. Mar. 25, 2021) (finding that the proposed intervenor and the defendant have the same objective in the suit where both parties shared the ultimate objective of dismissal); *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, No. 19-CV-11285, 2020 WL 5667181, at *5 (S.D.N.Y. Sept. 23, 2020) (denying motion to intervene because the intervenor applicants shared the same ultimate object); *Travis v. Navient Corp.*, 284 F. Supp. 3d 335, 346 (E.D.N.Y. 2018) (finding a presumption of adequate representation when the plaintiff and the proposed intervenors both sought to hold the defendant "accountable for allegedly steering borrowers toward forbearance"); *L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 18-CV-1902, 2018 WL 1782709, at *4 (E.D.N.Y. Apr. 12, 2018) ("While [intervenor applicant] has a more compelling argument that its

---

distinguished between different presumptions where there is a shared ultimate objective but not an identity of interests, while other district courts have effectively determined that the same presumption of adequacy attaches if there is either a shared objective or an identity of interest. *Compare Conn. Fine Wine & Spirits, LLC v. Harris*, No. 16-CV-1434, 2016 WL 9967919, at *7 (D. Conn. Nov. 8, 2016) (finding that the proposed intervenor and existing party shared the same objective of maintaining the "current statutory and regulatory regime," but that, absent an identity of interest, no presumption of adequate representation was triggered) *with Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, No. 19-CV-11285, 2020 WL 5667181, at *5 (S.D.N.Y. Sept. 23, 2020) (denying an intervenor applicant's motion to intervene because they shared an ultimate objective with the original party and did not suggest "collusion, adversity of interest, nonfeasance, or incompetence" by the original party) (quoting *Butler*, 250 F.3d at 180). Thus, some district courts have found as Proposed Intervenors argue, that there are different standards under *Butler* and *Brennan*, and other district courts have found as Plaintiffs argue that there is no distinction. The Court is not convinced by Proposed Intervenors' argument that *Brennan* clearly establishes a "less demanding" presumption than *Butler*. (Proposed Intervenors' Reply 6.) The Court, however, declines to resolve this issue because the Court concludes that Proposed Intervenors' do not overcome even the less demanding presumption of adequacy test established in *Brennan*.

11

interests do not completely overlap with those of the [original party] . . . that argument fails because the [intervenor applicant and the original party] have the same ultimate objective in this case: a declaration that the [policies] are not preempted.").

Plaintiffs argue that *United States v. Hooker Chemicals & Plastics Corp.,* 749 F.2d 968 (2d Cir. 1984) applies in this case, and provides an "additional heightened presumption of adequacy when the government is a party and is acting in its sovereign capacity." (Pls.' Opp'n 4.) *Hooker* established that "a greater showing that representation is inadequate" is required "in an enforcement action by a government entity suing as *parens patriae*." 749 F.2d 968, 985 (2d Cir. 1984). The Court agrees with Proposed Intervenors that the *Hooker* presumption does not apply because Defendants are not litigating this case as *parens patriae*. In addition, the *Hooker* presumption does not automatically apply simply because the government is a party to an action. *See, e.g.*, *United States v. Palermino*, 238 F.R.D. 118, 123 (D. Conn. 2006) (distinguishing cases where the government is suing on behalf of its citizens in a *parens patriae* capacity and where state officials are sued in their official capacities); *Herdman v. Town of Angelica*, 163 F.R.D. 180, 190 (W.D.N.Y. 1995) (applying a different test to cases where the government is defending the legality of its actions or laws than where the government is suing as *parens patriae*). Because the government does not purport to be litigating this case as *parens patriae*, the Court declines to apply a "greater showing" of inadequacy of representation to Proposed Intervenors' motion. *Hooker*, 749 F.2d at 985.

      **ii.** **Proposed Intervenors have not rebutted the presumption of adequate representation**

Proposed Intervenors' argument that their interests are not adequately represented because their position has diverged from Defendants' position in previous litigation is not sufficient to overcome the presumption of adequate representation. Plaintiffs note there is "no

12

evidence that the Federal Defendants are likely to change their position in this case and fail to defend the [Monument d]esignation or the commercial fishing bans." (Pls.' Opp'n 7.) Although the extensive history between the parties and Proposed Intervenors, combined with the upcoming change of presidential administrations, suggests that Proposed Intervenors' and Defendants' views might diverge again in the future, there is currently no evidence in this case that the Defendants will abandon or drastically change their position. *See New York v. U.S. Dep't of Health & Hum. Servs.*, No. 19-CV-4676, 2019 WL 3531960, at *6 (S.D.N.Y. Aug. 2, 2019) ("Proposed Intervenors' argument based on the possibility of a change in policy by a future Administration — an argument available in every case in which the federal Government defends a rule or statute — conflicts with the presumption that the defense by the federal government of its regulations is adequate.") (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2 525, 528 (9th Cir. 1983) ("In allowing intervention in this case we are mindful that the mere change from one presidential administration to another, a recurrent event in our system of government, should not give rise to intervention as of right in ongoing lawsuits.")); *L&M Bus Corp.*, 2018 WL 1782709, at *4 (denying a motion to intervene because the intervenor applicant's contention that the original party "could shift or alter its position in the case appears to be unfounded speculation.") (internal quotations and alterations omitted). As Plaintiffs note, Proposed Intervenors have not argued that Defendants' current position inadequately represents their interests, or that Defendants are refusing to defend the Monument designation and fishing bans. (Pls.' Opp'n 8–9.) The Proposed Intervenors have therefore not overcome the presumption of adequacy based on the possibility that Defendants might change their position at some point in the future.

    Proposed Intervenors' differing views on legal and factual arguments are also not sufficient to rebut the presumption of adequate representation. Proposed Intervenors argue that

13

they would advance different substantive positions and justiciability arguments than the government, as well as a collateral estoppel defense that the government does not raise in its Answer.  (Proposed Intervenors' Mem. 17–18; Proposed Intervenors' Reply 8–9; Defs.' Answer 24.)  The Second Circuit has stated that "[r]epresentation is not inadequate simply because 'the applicant would insist on more elaborate . . . pre-settlement procedures or press for more drastic relief,' . . . or where the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy." *City of New York*, 198 F.3d at 367 (internal citation omitted); *see also In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 301 (2d Cir. 2003) ("[T]here is no reason to believe that the [proposed intervenors'] interests will not be adequately protected . . . simply because the plaintiffs . . . have chosen a slightly different strategy and have raised slightly different claims."); *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc.*, 2020 WL 5667181, at *5 (finding that the presumption of adequate representation was not rebutted when both the plaintiffs and the proposed intervenor shared the ultimate objective of challenging the constitutionality of a state law because "representation is not inadequate simply because they have different ideas about how best to achieve these goals" (citing *City of New York*, 198 F.3d at 367)).  "[A] putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action." *Wash. Elec. Coop., Inc.*, 922 F.2d at 98 (quoting *Nat. Res. Def. Council, Inc.*, 834 F.2d at 61–62.)  "So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented." *Nat. Res. Def. Council, Inc.*, 834 F.2d at 62.  Proposed Intervenors' arguments that they would assert a collateral estoppel defense where Defendants do not, (Proposed Intervenors'

14

Mem. 17), that Defendants offer statute-of-limitations and ripeness defenses that Proposed Intervenors would not, (*id.* at 18), and that Proposed Intervenors present different statutory interpretation arguments than Defendants, (*id.* at 19), amount to little more than different litigation strategies and slightly different views of the law.  The Second Circuit has found that those differences are insufficient to overcome the presumption of adequacy.  *See, e.g.*, *In re Bank of N.Y. Derivative Litig.*, 320 F.3d at 301; *City of New York*, 198 F.3d at 367.

        Proposed Intervenors do not argue that they would raise "colorable legal defenses that the []defendants would be less able to assert," only that their legal strategy differs from Defendants' strategy.  *See Nat. Res. Def. Council, Inc.*, 834 F.2d at 62.  However, disagreements over how to litigate a case do not suggest that Defendants will not vigorously litigate the case.  *See L&M Bus Corp.*, 2018 WL 1782709, at *4 (denying a motion to intervene where there was no evidence that the original party was "not zealously litigating" the same position as the intervenor applicant); *United States v. City of New York*, No. 07-CV-2067, 2007 WL 2581911, at *4 (E.D.N.Y. Sept. 5, 2007) ("So long as the representative party will vigorously litigate, a difference in motive does not preclude adequate representation." (citing *Nat. Res. Def. Council, Inc.*, 834 F.3d at 62)).  Proposed Intervenors also do not present legal arguments that they could bring but that Defendants could not.  *See SEC. v. Ripple Labs, Inc.*, No. 20-CV-10832, 2021 WL 4555352, at *4 (S.D.N.Y. Oct. 4, 2021) ("[T]here are no legal or practical constraints preventing Defendants from asserting the arguments Movants put forth . . . Although Defendants may not stress certain arguments to the extent Movants desire, disagreement as to litigation strategy is not inadequacy."); *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 88 (D. Conn. 2014) (quoting *Nat. Res. Def. Council, Inc.*, 834 F.2d at 62) ("[T]here has been no showing that the nature of those economic interests is related to colorable legal defenses that the public defendants would be less able to

15

assert."); *Great Atl. & Pac. Tea Co. v. Town of E. Hampton*, 178 F.R.D. 39, 43 (E.D.N.Y. 1998) (finding that prevailing on a theory of inadequate representation requires the intervenor applicant to demonstrate a legal interest "that not only differs from the [original party's] interest, but would permit the [intervenor] to assert a justification for the law that could not be equally asserted by the [original party]."). Proposed Intervenors' arguments regarding divergent approaches to litigation strategy are insufficient to overcome the presumption of adequacy.

Accordingly, the Court finds that Proposed Intervenors are adequately represented under Rule 24(a). Because Proposed Intervenors only meet three of the four factors required for intervention under Rule 24(a), they are not entitled to intervention as of right. *See Harris-Clemons*, 751 F. App'x at 85 (stating that intervention as of right must be denied if a party "fails to satisfy any one of the factors") (quoting *Catanzano*, 103 F.3d at 232).

    c. **Permissive intervention**

In the alternative, Proposed Intervenors argue that they should be permitted to intervene permissively pursuant to Rule 24(b). They argue that they timely intervened, do not intend to assert any cross- or counter-claims, and that their involvement will not prejudice the existing parties or cause undue delay. (Proposed Intervenors' Mem. 20.)

Plaintiffs acknowledge that Proposed Intervenors satisfy "the baseline requirements for permissive intervention," but argue that the Court should nonetheless exercise its discretion to deny intervention. (Pls.' Opp'n 14.) Plaintiffs argue that because Proposed Intervenors' interests are adequately represented, intervention will not benefit them or contribute factual developments to the case but will instead unnecessarily complicate and delay the proceedings. (*Id.* at 15–16.)

The Court grants Proposed Intervenors permissive intervention under Rule 24(b)(1)(B)

16

because (1) Proposed Intervenors' motion was timely and (2) in view of the risk of impairment of their interests, the Court believes that Proposed Intervenors "will significantly contribute to full development of the underlying factual issues in the suit." *See Citizens Against Casino Gambling in Erie Cnty.*, 417 F. App'x at 50 ("[T]he court must consider 'whether the intervention will unduly delay or prejudice . . .[,] the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit.'" (quoting *H.L. Hayden Co. of N.Y., Inc.*, 797 F.2d at 89)). Proposed Intervenors have each detailed their long-standing advocacy for the Monument designation, their ongoing work and their members' interests in the Monument area, and their efforts to reinstate the Monument after President Trump revoked its status.  (*See* Bradford Sewell Decl. ¶ 6–37, Docket Entry No. 28-2; Sean Mahoney Decl. ¶ 9–37, Docket Entry No. 28-3; Miyoko Sakashita Decl. ¶ 7–19, Docket Entry No. 28-4; R. Zack Klyver Decl. ¶ 4–18, Docket Entry No. 28-5.)  They have also participated in nearly a decade of previous litigation related to the Monument's designation and the commercial fishing bans.  Proposed Intervenors are thus well-positioned to contribute a robust perspective on both the factual and legal issues in this case. *See Hum. Servs. Council of N.Y. v. City of New York*, No. 21-CV-11149, 2022 WL 4585815, at *5 (S.D.N.Y. Sept. 29, 2022) (granting permissive intervention where proposed intervenor's "firsthand knowledge" could lead "to a more complete factual record" even though the proposed intervenor and the original party had a shared objective); *335-7 LLC v. City of New York*, No. 20-CV-1053, 2020 WL 3100085, at *3 (S.D.N.Y. June 11, 2020) (granting permissive intervention when the proposed intervenors were "grassroots organizations that closely serve[d] tenants directly impacted by the [challenged law]" and were "intimately involved in efforts in

17

connection with the [challenged law] for decades" who "will undoubtedly contribute 'to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented'" (quoting *Grewal v. Cueno*, No. 13-CV-6836, 2014 WL 2095166, at *3 (S.D.N.Y. May 20, 2014)); *U.S. Dep't of Health & Hum. Servs.*, 2019 WL 3531960, at *6 (granting permissive intervention where the proposed intervenors could submit "concrete factual submissions . . . as to the hardships occasioned" by a change in the challenged rule); *Allco Fin. Ltd.*, 300 F.R.D. at 88 ("[G]iven the involvement of [proposed intervenors] in the process being challenged and their specialized knowledge of the legal issues presented, their addition to this case will assist the Court in reaching a just and speedy adjudication of this matter."); *Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 106 (E.D.N.Y. 1996) ("The intervenors will bring a different perspective to the case and will contribute relevant factual variations that may assist the court in addressing the constitutional issue raised."); *cf. Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc.*, 2020 WL 5667181, at *7 (denying permissive intervention where the proposed intervenor did "not appear to offer a unique perspective that would be lost without its participation").

The Court is not persuaded that the Proposed Intervenors will "unduly delay or prejudice the adjudication of the rights of the original parties." *Citizens Against Casino Gambling in Erie Cnty.*, 417 F. App'x at 50 (internal quotation omitted). Plaintiffs argue that Proposed Intervenors' involvement "poses a risk of prejudice to the existing parties, undue delay, and inefficiency." (Pls.' Opp'n 15.) They argue that because Proposed Intervenors' interests are already adequately represented, introducing Proposed Intervenors will "increase[] difficulties in scheduling, organizing joint filings, and agreeing on stipulations," which, when aggregated over the length of the case, will prejudice Plaintiffs. (*Id.* at 15-16.) First, district courts routinely

18

grant permissive intervention to applicants even in cases where the court has found that the existing party adequately represents the proposed intervenor's interest. *See, e.g.*, *Hum. Servs. Council of N.Y.*, 2022 WL 4585815, at *4 (granting permissive intervention after denying intervention as of right because the intervenor was adequately represented); *Bldg. & Realty Inst. of Westchester & Putnam Cntys.*, 2020 WL 5658703, at *13 (same); and *U.S. Dep't of Health & Hum. Servs.*, 2019 WL 3531960, at *7 (same). Rule 24(b) itself does not contemplate the adequacy of representation as one of the considerations for the court. *Allco Fin. Ltd.*, 300 F.R.D. at 88. The fact that Proposed Intervenors are adequately represented does not weigh against permissive intervention. Second, the Court is not persuaded that Proposed Intervenors will prejudice existing parties by causing undue delay or inefficiency. Proposed Intervenors have offered to "work with the other parties toward the efficient adjudication of the case." (Proposed Intervenors' Mem. 20.) They addressed Plaintiffs' concerns about adding additional parties and counsel by stating that they "will brief as one, as [they] have done in all previous rounds of litigation," and noted that they conducted discovery in a previous case without "once seeking that court's intervention." (Proposed Intervenors' Reply 10.) Proposed Intervenors timely filed their motion before Defendants even filed their Answer, and the existing parties have not filed requests for further motions. (Proposed Intervenors' Mot. 2; Defs.' Answer 25.) The Court also notes that Proposed Intervenors' extensive familiarity with the factual and legal issues in this case weighs against Plaintiffs' argument that granting Proposed Intervenors' motion will cause inefficiencies. The Court is unpersuaded that the Proposed Intervenors will lead to undue delays and prejudice existing parties. *U.S. Dep't of Health & Hum. Servs.*, 2019 WL 3531960, at *7 (granting permissive intervention where it would not "unduly delay, or prejudice, the adjudication of the original parties' rights" or occasion "any revision of the existing schedule").

Accordingly, the Court grants Proposed Intervenors' permissive intervention.

### III. Conclusion

For the foregoing reasons, the Court grants Proposed Intervenors' motion for permissive intervention pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

Dated: December 2, 2024
       Brooklyn, New York

SO ORDERED:

_____/s MKB_____
MARGO K. BRODIE
United States District Judge