PACIFIC LEGAL FOUNDATION

September 24, 2026

Honorable Sanket J. Bulsara
U.S. District Court, Eastern District of New York
Islip Division
100 Federal Plaza
Courtroom 930
Central Islip, NY 11722

Re: Plaintiffs' Letter Brief,
*Green et al. v. Biden et al.*, No. 2:24-cv-01975-SJB-ARL

Dear Judge Bulsara:

**INTRODUCTION**

Frank Green and Robert Conrad each have more than 45 years' experience as commercial fishermen in the Northeast. Compl. 6–7, Dkt. No. 1. They are federally permitted and have legally fished in the waters now included in the Northeast Canyons and Seamounts Marine National Monument ("Monument"). They would like to continue having the ability to do so. *Id.* And this case may present their only opportunity to protect that interest.

Ever since the Monument was created, Mr. Green and Mr. Conrad have been caught in the middle of a regulatory tug-of-war over commercial fishing in those waters, which has continued through the past four presidential administrations. When commercial fishing is banned within the Monument waters, they cannot access the Monument to fish. And even when fishing has been allowed, their ability to plan their fishing seasons has been disrupted by the constant risk that the ban will be reimposed. *Id.* They have had to pivot every time the legal status of commercial fishing in the Monument has flip-flopped—four times over the past ten years. *See* Proclamation No. 9496, 81 Fed. Reg. 65161 (Sep. 15, 2016) ("Proclamation 9496") (designating approximately 4,913 square miles of ocean as Monument and banning commercial fishing therein); Proclamation No. 10049, 85 Fed. Reg. 35793 (Jun. 5, 2020) (modifying Proclamation 9496 by removing ban on commercial fishing within the Monument) ("Proclamation 10049"); Proclamation No. 10287, 86 Fed. Reg. 57349, 57352–53 (Oct. 8, 2021) ("Proclamation 10287") (restoring the commercial fishing ban within the Monument); Magnuson-Stevens Act Provisions; Prohibition of Commercial

Fishing in the Northeast Canyons and Seamounts Marine National Monument, 89 Fed. Reg. 12282, 12286 (Feb. 16, 2024) ("Seamounts Regulation") (additionally banning Monument commercial fishing under Magnuson-Stevens Act); Proclamation No. 11009, 91 Fed. Reg. 6489 (Feb. 6, 2026) ("Proclamation 11009") (revoking Proclamation 10287); Magnuson-Stevens Fishery Conservation and Management Act Provisions; Modifications to Conform U.S. Fishery Regulations with the Presidential Proclamation Unleashing Commercial Fishing in the Atlantic, 91 Fed. Reg. 17159 (Apr. 6, 2026) ("2026 Rule") (rescinding Seamounts Regulation).

For the moment, President Trump and the National Marine Fisheries Service ("Service") have voluntarily rescinded the commercial fishing bans for policy reasons. *See* Proclamation 11009, 91 Fed. Reg. at 6490; 2026 Rule, 91 Fed. Reg. at 17160. But these rescissions have proved to be transitory. That isn't surprising, given the nature of presidential proclamations: at least as the federal government asserts, such proclamations can alter legal rights with nothing more than the stroke of a pen. This cycle will continue until a court addresses the underlying legal issues raised by Mr. Green and Mr. Conrad in this suit. *See* Compl. 21–29, Dkt. No. 1. Thus, the Federal Defendants in this case cannot meet their burden to show that it is "absolutely clear" that the commercial fishing ban "could not reasonably be expected to recur." *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189, 190 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968)). The case is not moot.

## ARGUMENT

### I. This case is not moot under the voluntary cessation doctrine.

#### A. Federal Defendants bear the burden to show that the Monument commercial fishing ban will not be reinstated.

A federal court's obligation to adjudicate live cases is "virtually unflagging." *FBI v. Fikre*, 601 U.S. 234, 240 (2024) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). A case is only moot, and therefore unable to be adjudicated by a federal court, if a plaintiff secures by other means "all the relief he might have won" in the case. *Fikre*, 601 U.S. at 240. A defendant cannot "automatically moot a case" by pausing its contested conduct after being sued. *Id.* at 241 (citation omitted). Rather, under the voluntary cessation doctrine, a defendant who voluntarily ceases challenged conduct must show "absolutely clear[ly]" that "the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189 (quoting *Concentrated Phosphate Export Ass'n*, 393 U.S. at 203). The Supreme Court has described this burden as "stringent," "heavy," and "formidable." *Id.* at 189, 190.

The Second Circuit articulates the standard for mootness when a defendant has voluntarily ceased its challenged conduct as a two-part test. A defendant must show both "no reasonable expectation that the alleged violation will recur" and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004) (citation omitted).

Some Second Circuit cases suggest that government defendants should be granted "[s]ome deference" to their "representations that certain conduct has been discontinued." *Lamar Advertising*, 356 F.3d at 375–76 (citing *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992)); *see also Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2016) (granting deference to MTA's representation that it would not resume challenged conduct). But as one court has noted, the Supreme Court has clarified that the same burden of proof "holds for governmental defendants no less than for private ones." *Fikre*, 601 U.S. at 241; *Pinkhasov v. Vernikov*, No. 1:23-cv-3460, 2024 U.S. Dist. LEXIS 87774, at *26–27 (E.D.N.Y. May 15, 2024). Indeed, what matters is "the substance of what can be learned about a defendant's future conduct," not "the status of the speaker." *Pinkhasov*, 2024 U.S. Dist. LEXIS 87774, at *27. No deference is owed to the Federal Defendants' representations here.

**B. Federal Defendants cannot show that there is no reasonable expectation that the commercial fishing ban will be reinstated.**

The Federal Defendants cannot meet the heavy burden of proof required to satisfy the voluntary cessation doctrine. Indeed, the commercial fishing ban challenged here is peculiarly prone to frequent change, as borne out by its history over the past ten years. And currently pending litigation makes it even more likely that the ban may be reimposed.

**1. The Monument commercial fishing ban has a strong history of reinstatement after prior revocation.**

At this moment, commercial fishing is currently allowed within Monument boundaries. *See* Proclamation 11009, 91 Fed. Reg. at 6490; 2026 Rule, 91 Fed. Reg. at 17159. But permission is likely to be fleeting. The commercial fishing ban has been alternately imposed, lifted, imposed, and lifted between four successive presidential administrations: this started with the original Proclamation issued by President Obama that created the Monument in 2016, followed by President Trump's 2020 Proclamation removing the ban. The substantive requirements of that Proclamation were quickly reversed by President Biden in 2021 and supplemented by the Service's own rules in 2024. And both President Biden's Proclamation and the Seamounts Regulation were recently revoked this past spring 2026. *See* Proclamation 9496, 81

Fed. Reg. at 65165; Proclamation 10049, 85 Fed. Reg. at 35795; Proclamation 10287, 86 Fed. Reg. at 57352–53; Seamounts Regulation, 89 Fed. Reg. at 12286; Proclamation 11009, 91 Fed. Reg. at 6490; 2026 Rule, 91 Fed. Reg. at 17159.

**2. The back-and-forth history of this ban is aided by the easy regulatory mechanism invoked by the Presidents.**

To create a new national monument pursuant to the Antiquities Act, a President need not introduce legislation in Congress or comply with the rulemaking requirements of the Administrative Procedure Act. Instead, the Act authorizes the President to designate monuments via presidential proclamation. 54 U.S.C. § 320301(a). Reading that authority expansively, multiple presidential administrations have used the proclamation authority to ban an entire category of commercial activity within a huge area of ocean with the stroke of a pen.

With so little process required, the speed at which a new presidential administration can alter the status of commercial fishing in the Monument area depends only on the priority of the issue to the President—President Biden reimposed the commercial fishing ban less than a year and a half after President Trump's 2020 lifting of the ban, for instance. Thus, Proclamation 11009 is qualitatively different from, for example, the amending of sign ordinances and regulations, which the Second Circuit found mooted legal challenges to the latter. *Cf. Lamar Advertising*, 356 F.3d at 376 (noting constitutional challenges to statutes are routinely found moot after statutory amendments); *Granite State Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451–52 (2d Cir. 2002) (challenge to local sign regulations moot where town revised regulations through proper procedures). Such sign ordinances had to be approved through legislative processes, whereas the Proclamation can be easily revoked and the commercial fishing ban in the Monument can be reimposed with few, if any, hurdles that otherwise might reassure that the ban will not reappear.

The regulatory tug-of-war over commercial fishing within the Monument is even more intense than the inter-administration back-and-forth over the Clean Air Act regulations at issue in *West Virginia v. EPA*, which also played out between the Obama, Trump, and Biden administrations. 597 U.S. 697, 715–18 (2022). In *West Virginia*, the regulations were pending their third rewrite when the Supreme Court heard the case and found it not moot. Here, in contrast, the status of commercial fishing in the Monument area has already cycled through four different rounds of regulation and de-regulation.

This frequent flip-flopping results from the lack of legal process required to issue a presidential proclamation—less process than that required for the flip-flopping regulations at issue in *West Virginia*. *See West Virginia*, 597 U.S. at 715–18; Proclamation 9496, 81 Fed. Reg. at 65161, 65165; Proclamation 10287, 86 Fed. Reg.

at 57352. Here, the ban has been lifted, whereas the EPA regulations in *West Virginia* were still formally in place. But the Proclamation here is just as easily withdrawn as the EPA's nonbinding promise not to enforce the challenged regulations, which the Supreme Court rejected as a basis for mooting *West Virginia*. 597 U.S. at 720.

Even more, under the theory asserted by Proclamation 11009, the current Presidential administration could decide to reimpose the ban, either "immediately or later," as it sees fit to regulate the Monument. *Fikre*, 601 U.S. at 243. Proclamation 11009 bases its lifting of the commercial fishing ban on the sufficiency of existing laws and regulations governing flora and fauna in the Atlantic Ocean. Proclamation 11009, 91 Fed. Reg. at 6489–90. Nothing in the Proclamation disavows the President's authority to regulate or ban commercial fishing in the Monument. Its theory is one of discretion, not duty.

Thus, nothing in Proclamation 11009 holds the current administration (or future administrations) to maintaining access to the Monument for commercial fishermen like Mr. Green and Mr. Conrad. The Proclamation here is more akin to the EPA's promise not to enforce its regulations in *West Virginia* or the then-rescinded policy of the state of Missouri in *Trinity Lutheran Church of Columbia, Inc. v. Comer* than *Lamar Advertising* or *Granite State Advertising*'s ordinances. *See Trinity Lutheran*, 582 U.S. 449, 457 n.1 (2017) (finding a state policy not moot despite change in state policy where nothing prevented the State from reimposing the policy and where the policy stemmed from a court's interpretation of state law).

**3. Intervenor-Defendants here are actively suing in another court to have the ban reimposed.**

Another factor also increases the likelihood that the commercial fishing ban will be reinstated, even before any change in the presidential administration. Currently pending in the District Court for the District of Columbia is a challenge to Proclamation 11009 and the 2026 rule. That challenge is brought by the Intervenor-Defendants in this case: Conservation Law Foundation, Natural Resources Defense Council, Center for Biological Diversity, and R. Zack Klyver. *See* Memorandum and Order granting motion to intervene (filed Dec. 2, 2024), Dkt. No. 36; Compl., *Conservation Law Found. v. Trump*, 1:26-cv-01528 (D.D.C. filed May 4, 2026), Dkt. No. 1; Am. Compl., *Conservation Law Foundation*, 1:26-cv-01528 (D.D.C. filed Aug. 28, 2026), Dkt. No. 44.

The risk of the ban being reimposed through the *Conservation Law Foundation* litigation is not speculative: the plaintiffs in that case request the court to vacate the Service's 2026 rule, declare Proclamation 11009 invalid, and enjoin any federal agency from enforcing it. Compl., *Conservation Law Found.*, 1:26-cv-01528 at 70–71; Am. Compl., *Conservation Law Found.*, 1:26-cv-01528 at 81–82. If the court there

grants the plaintiffs their requested relief, commercial fishing will once again be banned within the Monument.

## II. This case is not moot because Mr. Green and Mr. Conrad remain subject to potential criminal prosecution under the broad terms of the Monument designation.

A case only becomes moot if circumstances outside the litigation give the plaintiff "all the relief he might have won in it." *Fikre*, 601 U.S. at 240. But here, lifting the commercial fishing ban does not eliminate all potential liability arising from Mr. Green's or Mr. Conrad's fishing in the Monument. The corresponding criminal provision to the Antiquities Act, 18 U.S.C. § 1866, imposes strict criminal liability, including potential imprisonment, fines, or both, on anyone who "appropriates, excavates, injures, or destroys any … monument or any other object of antiquity." 18 U.S.C. § 1866(b). But the Monument designation here defines the "objects" to be protected within the Monument extremely broadly as "ecosystems," "biodiversity," and "natural resources," encompassing a vast array of flora, fauna, and underwater landscape features. *See*, *e.g.*, Proclamation 10287, 86 Fed. Reg. at 57349; Proclamation 10049, 85 Fed. Reg. at 35793.

Between the broadly defined crime in 18 U.S.C. § 1866 and the hazily and very broadly defined "objects" to be protected in the Monument area, Mr. Green and Mr. Conrad risk potential prosecution under § 1866 even during responsible fishing within the Monument. Because Proclamation 11009 does nothing to cabin the identification of "objects" in the Monument, it does not eliminate the risk of criminal prosecution arising from the broad Monument designation—the designation that Mr. Green and Mr. Conrad challenge in this case. *See* Compl. at 24–26, 30, Dkt. No. 1 (claim that "ecosystems" and "biodiversity" cannot be "objects" under the Antiquities Act, declaratory relief requested that such designation is ultra vires).

Even if the risk of prosecution is not so acute here now that it alone would have allowed Mr. Green and Mr. Conrad to establish standing, the risk is certainly enough to overcome mootness. *See Laidlaw*, 528 U.S. at 190. And nothing in the Supreme Court's decisions "requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163 (2014), or to wait and "'bet the farm [] by taking the violative action.'" *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 490 (2010) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)). The case is therefore still live and not moot.

**CONCLUSION**

Because of the unique history of this fishing ban, the mechanism by which the ban has been imposed, the reasoning provided by the federal government when it lifted the ban earlier this year, and the pending litigation seeking to reimpose the ban, the Federal Defendants cannot meet their "formidable burden" to make "absolutely clear" that there is no reasonable likelihood that the Monument commercial fishing ban challenged by Mr. Green and Mr. Conrad will be reimposed. And Proclamation 11009 does nothing to address the underlying legal issues with the Monument designation. The government's voluntary lifting of the ban therefore does not moot this case.

Respectfully submitted,

*/s/ Katherine M. Klem*

FRANK D. GARRISON*
Ind. Bar No. 34024-49
PAIGE E. GILLIARD*
Cal. Bar No. 330051
Pacific Legal Foundation
3100 Clarendon Blvd.
Suite 1000
Arlington, Virginia 22201
FGarrison@pacificlegal.org
PGilliard@pacificlegal.org
Telephone: (202) 888-6881

KATHERINE M. KLEM*
Cal. Bar No. 342490
DAMIEN M. SCHIFF*
Cal. Bar No. 235101
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
KKlem@pacificlegal.org
DSchiff@pacificlegal.org
Telephone: (916) 419-7111

**Pro Hac Vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE AND SERVICE**

I hereby certify that per the Court's September 20, 2026, Order, the body of this letter is ~2,565 words. I relied on my word processor, Microsoft Word, to obtain the count.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

*/s/ Katherine M. Klem*
KATHERINE M. KLEM